IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MINDY REES.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. CBD-20-1695** |
| | ) | |
| **KILOLO KIJAKAZI[1],** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Mindy R. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 14, Plaintiff's Alternative Motion for Remand, ECF No. 14, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 15. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion. A separate order will issue.

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

I. **Procedural Background**

On March 9, 2017, Plaintiff filed for DIB under Title II of the SSA. Plaintiff also filed for Title XVI of the SSA, on March May 26, 2017. For both applications, Plaintiff alleged disability beginning September 15, 2016.[2] R. 15. Plaintiff alleged disability due to severe depression, pre-diabetes, and thyroid disease. R. 95. Plaintiff's claims were initially denied on September 8, 2017, and upon reconsideration on January 10, 2018. R. 15. An administrative hearing was held on April 17, 2019. R. 15. On September 3, 2019, Plaintiff's claims for DIB and SSI were denied. R. 24. Plaintiff sought review by the Appeals Council, which concluded on May 22, 2020, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

II. **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a

---

[2] At the administrative hearing, Plaintiff amended her onset date to May 26, 2017. R. 15.

reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).  The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a). The ALJ must present a "narrative discussion describing

how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 17–24. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 26, 2017, the amended alleged onset date. R. 17–18. At step two, under 20 C.F.R. § 404.1520(c) and §416.920(c), the ALJ determined major depressive disorder as Plaintiff's only severe impairment. R. 18. The ALJ stated that major depressive disorder was severe because it "significantly limit[s] [Plaintiff's] ability to perform basic work activities." *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and

416.926)." R. 18– 19.  Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 404.1567 and 416.967, but with these limitations:

> [Plaintiff] can frequently be exposed to fumes, odors, dust, gases, poor ventilation, and pulmonary irritants; [Plaintiff] can sustain concentration, persistence, and pace for simple work functions, follow detailed instructions, and maintain a regular schedule; [Plaintiff] can adapt to workplace changes for simple work functions and occasionally interact with and respond appropriately to supervisors, coworkers, but never with the general public.

R. 20.  At step four, the ALJ determined that Plaintiff can perform her past relevant work as a janitor.  R. 23.  The ALJ found that Plaintiff has not been under a disability, since May 26, 2017, as defined in the SSA.  R. 24.

On appeal, Plaintiff argues that the ALJ erroneously evaluated Plaintiff's subjective complaints, and the ALJ erroneously assessed Plaintiff's RFC.  Pl.'s Mem. in Supp. of Pl.'s Mot. 3–10, ECF No. 14–1.  Defendant argues that substantial evidence supports Plaintiff's symptom evaluation and RFC determination.  Def.'s Mem. in Supp. of Def.'s Mot. 6, 8, ECF No. 15–1. Defendant avers that the ALJ properly found Plaintiff could perform a full range of work at all exertional levels with nonexertional mental limitations, relying on an extensive review of the medical evidence, hearing testimony, the opinions of the state agency consultants, and Plaintiff's testimony.  *Id.* at 5.  For the reasons set forth below, the Court **DENIES** Plaintiff's Motion and **AFFIRMS** the ALJ's decision.

### A.  Defendant Properly Evaluated Plaintiff's Subjective Complaints

In evaluating a claimant's subjective complaints pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the ALJ is required to follow a two-step process.  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted).  First, the ALJ must find that objective medical evidence is present to show that a claimant has a medical impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. §§ 404.1529


(b), 416.929 (b).  At the second step, the ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which it affects her ability to work.  *Id.*  To assess the intensity, persistence, and limiting effects of the symptoms, the ALJ considers all the evidence presented, including *inter alia*, a claimant's daily activities; precipitating and aggravating factors; treatment a claimant received; the type, dosage, effectiveness, and side effects of any medication; and any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.  *Id.*  The ALJ will also evaluate a claimant's statements in relation to the objective medical evidence and other evidence, in deciding whether she is disabled.  *Id.*

The second step requires the ALJ to assess the credibility of the claimant's statements about her symptoms and their effect on her ability to perform work activities.  *E.g.*, *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  A claimant's subjective statements about pain intensity or persistence "cannot be discounted solely based on objective medical findings." *Id.*  However, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her symptoms can reasonably be accepted.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  The Fourth Circuit makes clear that:

> Although a claimant's allegations about her [symptom] may not be discredited solely because they are not substantiated by objective evidence of the [symptom] itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptom] the claimant alleges she suffers.

*Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

As stated above, Plaintiff argues that Defendant erroneously evaluated her subjective complaints.  Specifically, Plaintiff contends that the ALJ "erroneously required Plaintiff to prove

the type and degree of her subjective complaints by objective medical evidence and determined that she had not done so." Pl.'s Mem. in Supp. of Pl.'s Mot. 6.  Plaintiff also argues that Defendant "specifically rejected Plaintiff's testimony regarding her subjective complaints on the basis that her complaints were inconsistent with the consultative examination results and the treatment records."  *Id.*  Plaintiff claims that the ALJ applied an improper standard to the evaluation of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.  *Id.*  This Court disagrees.

> In the instant case, the ALJ found:
>
> [Plaintiff's] medically determinable impairment [major depressive disorder], could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

R. 20.  The ALJ considered Plaintiff's complaints, activities of daily living, treatment records, medication compliance, the consultative examinations, and medical opinion evidence.  R. 20–23.  The record supports that the ALJ evaluated Plaintiff's statements, in relation to the evidence.  For instance, Plaintiff reported a history of depression since 1991, and although she reported a psychiatric hospitalization in 1991, there was no evidence of Plaintiff having any other inpatient hospitalization since.  R. 21.  Plaintiff also claimed that she felt agitated on some days and did not want to get up, but the ALJ noted that "on examination there was no evidence of psychomotor agitation or retardation," as Plaintiff was cooperative, answered all questions without hesitation, and denied hallucinations and suicidal ideation.  *Id.*  The ALJ also considered Plaintiff's complaint of memory loss; yet, the ALJ pointed to evidence that showed Plaintiff recalled all three objects during an evaluation, she remembered details from her childhood, she could complete serial 7s, spell "world" forward and backward, and follow a three-step command.  *Id.*

The ALJ noted other evidence in the record, such as: Plaintiff's "prognosis was good with effective mental health treatment;" "[Plaintiff] was attending outpatient mental health [treatment] once a week . . . and she reported that [it] was very helpful;" "[Plaintiff] reported ordinary activities of daily living, including going to work, cooking, cleaning, and grocery shopping;" "[Plaintiff] reported that she does not have a problem with other people, because she works alone;" "[Plaintiff reported] go[ing] to public places, [only] if she needs to," and "[Plaintiff] [stated] she is used to being by herself and does not have conflicts with others."  R. 21.  The ALJ also found that "[Plaintiff] was compliant with her medications with no side effects."  R. 22.

After considering the evidence, the ALJ noted that Plaintiff's examination results "do not support a finding a disability."  R. 21.  The ALJ found that:

> There is no evidence of psychosis or severe cognitive impairment.  [Plaintiff's] social limitations are not debilitating and can be accommodated by limiting [Plaintiff] to occasional contact with supervisors, coworkers, and the public.  None of the examination results suggest that she is incapable of sustaining attendance or time on task.

*Id.*  The ALJ also considered Plaintiff's treatment records and noted that they do not support a finding of disability or that her symptoms are disabling.  R. 21–22.  The ALJ pointed out that in February 2018, Plaintiff reported problems with anxiety attacks, but she denied anxiety and panic attacks since then.  R. 22.  The ALJ also noted that "[Plaintiff's] relationships with friends and family had ceased; but [Plaintiff's] self-care skills were intact, domestic skills were unimpaired, anger was controlled, and [Plaintiff] was performing normally at work."  *Id.*

The record shows that the ALJ considered Plaintiff's complaints, objective evidence, and other evidence in the record.  Moreover, the ALJ was impartial throughout her decision.  This is evidenced by the fact that the ALJ gave less weight to Dr. Joan Joynson, a state agency reviewing psychologist, when she opined that Plaintiff "is able to appropriately respond to

supervision, coworkers, and the general public, [and] is better suited for work having low public contact." R. 22.  The ALJ found that Dr. Joynson underestimated the extent of Plaintiff's social limitations.  *Id.*  The ALJ accordingly found Plaintiff's social limitations more debilitating and stated that there was documented evidence of Plaintiff's social anxiety and self-isolation.  *Id.*  Thus, the ALJ limited Plaintiff to only occasional interaction with supervisors, coworkers and the public.  *Id.*  Similarly, Dr. James Smith opined that "[Plaintiff's] abilities to interact socially and in an appropriate and productive fashion are intact [and] [Plaintiff's] ability to adapt is fair."  *Id.*  The ALJ noted that this was not persuasive, although it was generally supported by the examination results.  R. 22.  The ALJ found that "the record as a whole supports more restrictive limitations due to social withdrawal, social isolation from family and friends, avoidance of certain social situations, feelings of loneliness, and feelings of worthlessness."  R. 22.  The ALJ also found that Dr Arnheim's opinion was persuasive, as it accounted for Plaintiff's anxiety and distractibility; but despite her limitations, the ALJ stated, "[Plaintiff] was cooperative and intelligent, with no psychosis or suicidal ideation."  R. 22–23.

The ALJ did not require Plaintiff to prove her subjective complaints by the objective medical evidence and did not rely solely on the objective evidence to discredit Plaintiff's subjective complaints.  The ALJ considered Plaintiff's limitations and accounted for them in the RFC.  Since the ALJ considered Plaintiff's complaints, along with the available evidence and provided sufficient explanation for her decision, the Court finds that the ALJ did not err when evaluating Plaintiff's subjective complaints.

### B.  Defendant Properly Assessed Plaintiff's RFC

Plaintiff argues that the ALJ failed to conduct a function-by-function assessment, with respect to Plaintiff's mental limitations.  Pl.'s Mem. in Supp. of Pl.'s Mot. 9.  Plaintiff also

contends that the ALJ failed to include any limitation on concentration, persistence or pace in the RFC, and instead limited Plaintiff to simple work functions, in violation of *Mascio v. Colvin*. *Id.* at 9–10.

Under *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, and pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio,* 780 F.3d at 638. This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). The Fourth Circuit reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that "[a]n ALJ can explain why [a plaintiff]'s moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC.").

In making the RFC assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ likewise must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.).

At step three of the analysis, the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace.  R. 19.  The ALJ stated:

> With regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation.  [Plaintiff's] mental impairments can reasonably be expected to limit her concentration, persistence, and pace.  Nevertheless, [Plaintiff] could complete serial 7s, spell "world" forward and backward, and follow a three-step command (internal citations omitted).  During testing, [Plaintiff] persevered on challenging tasks and put forth satisfactory effort (internal citations omitted).

R. 19.  The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels.  R. 20.  Considering Plaintiff's mental impairments, the ALJ concluded that:

> [Plaintiff] can sustain concentration, persistence, and pace for simple work functions, follow detailed instructions, and maintain a regular schedule; she can adapt to workplace changes for simple work functions and occasionally interact with and respond appropriately to supervisors, coworkers, but never with the general public.

R. 20.  In the narrative discussion, the ALJ cited the medical opinions of three professionals that supported the ALJ's findings with respect to concentration, persistence or pace.  R. 22–23.  Dr. Joynson opined that Plaintiff "can persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain at this level over an extended period of time."  Dr. Joynson also found that Plaintiff can "sustain concentration, persistence, and pace for simple work functions, follow detailed instructions, and maintain a regular schedule."  R. 22.  Dr. Smith opined that "[Plaintiff's] abilities to sustain concentration and persistence are fair."  *Id.*  Dr. Arnheim opined *inter alia* that "[Plaintiff] can understand, remember, and carry out simple instructions."  *Id.*  The ALJ explained that Dr. Arnheim's opinion "is consistent with the record as a whole, which shows that [Plaintiff] suffers from anxiety and distractibility, but she is nevertheless cooperative and intelligent, with no psychosis or suicidal ideation (internal citations omitted)."  R. 22.  Accordingly, the ALJ adopted Dr. Arnheim's limitations in the RFC.  *Id.*

The record reflects that the ALJ conducted a function-by-function assessment of Plaintiff's mental limitations and explained why Plaintiff was limited to "simple work functions." R. 20–23. Since the ALJ connected her step 3 findings to the RFC assessment, and provided sufficient explanation regarding Plaintiff's limitations throughout the RFC narrative, the Court finds there is no reversible error.

**IV.   Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, and **GRANTS** Defendant's Motion.

March 8, 2022                                                        /s/
                                                                    Charles B. Day
                                                                    United States Magistrate Judge

CBD/pjkm